(28 Misc. Rep. 508.)

AMER et al. v. FOLK et al.

(Supreme Court, Appellate Term. July 26, 1899.)

1. APPEAL—PRESUMPTIONS—JUDGMENT OF DISMISSAL.
    On review of a judgment dismissing the complaint, plaintiff's testimony must be taken as true.

2. ACCORD AND SATISFACTION—CONSENT—EVIDENCE.
    Defendant offered plaintiff less than the regular price per foot for a lot of skins, which plaintiff accepted on condition that defendant "take. the lot and chance it." Defendant returned a portion of the skins as defective, but plaintiff refused to receive them, and they were left with the carrier. Defendant sent a check for the goods accepted, which plaintiff cashed without acknowledging its receipt. Defendant afterwards called upon plaintiff, when the latter insisted that the former had no right to reject the defective skins. There was no dispute as to the price or the number of skins furnished. *Held*, that the acceptance of the check by plaintiff was not an accord and satisfaction.

3. SAME—CONSIDERATION.
    Even if the check was accepted as an accord and satisfaction, such acceptance was without consideration, and not binding on plaintiff.

Appeal from city court of New York, general term.

Action by Edward C. Amer and another against John H. Folk and another. From a judgment dismissing the complaint (58 N. Y. Supp. 397), plaintiffs appeal. Reversed.

Argued before FREEDMAN, P. J., and MacLEAN and LEVENTRITT, JJ.

Blumenstiel & Hirsch, for appellants.
Hastings & Gleason, for respondents.

LEVENTRITT, J. The question presented by the record in this case is whether the evidence established an accord and satisfaction, justifying a dismissal of the complaint. The plaintiffs were manufacturers of glazed kid skins in the city of Philadelphia. The defendants were engaged as dealers in leather in this city. On October 21, 1896, the defendants purchased 682 dozen of combination kid skins. The plaintiffs' version of the transaction, which, in view of the dismissal of the complaint, must be accepted as true, is briefly as follows:

After an examination of the goods by Charles Fritz, one of the defendants, he made an offer of 13 cents a foot; the asking price being 14 cents. The offer was accepted on condition that the defendants would "take the lot and chance it." On these terms, 341 bundles, containing two dozen skins each, were shipped to the defendants on October 21, 1896, and a bill in the sum of $4,263.94 was sent on the same day. The defendants at first claimed that the shipment was 10

dozen short.    Subsequently they found the missing goods, but then, claiming defects in some of the skins, wrote this letter:

October 28th, 1896.

Messrs. Wm. Amer & Co.—Gentlemen: We had to go over the entire lot of stock again to find the 10 dozen which were short, and we found you were right; but, on examination of the entire lot of stock, we find a vast difference. The writer examined every bdle. himself, and found 259 bdles. which were up to sample, and 82 bdles. which were not. So we return you this day, via New Line, those bdles., as inclosed memo., which are not. Kindly credit same to our account, and oblige,

Yours, resp'y,                                        Folk & Fritz.

Added to this letter was a detailed statement of the measurement of the 82 bundles, showing that they contained 7,987¾ feet, and a calculation at 13 cents, which amounted to $1,038.41.

The plaintiffs replied:

Philadelphia, October 29th, 1896.

Messrs. Folk & Fritz, 47 Warren Street, New York, N. Y.—Gentlemen: Your letter received with regard to stock sold. In the first place, it was a straight sale. You looked through all the goods, and bought them with the remark, "I will take the lot and chance it." The stock was the same you looked at, and the lot you refused we still have on hand. Now, as this was a straight sale, we refuse to receive the goods. Your next-door neighbor wanted the goods, and claimed them, even threatening us with a lawsuit.

Yours, truly,                                        Wm. Amer & Co.

The returned goods arrived in Philadelphia.    They were offered to the plaintiffs, who refused to receive them.    Thereupon they were stored by the carrier, and were still in the latter's possession at the time of trial.

On November 13, 1896, after the return of the rejected goods, the defendants remitted for the skins retained, by a check inclosed in the following letter:

Messrs. Wm. Amer & Co.: Inclosed find check for $3,080 38/100 in settlement of bill Oct. 21st, less mdse. ret'd, and discount. Please acknowledge receipt, and oblige,

Yours, respectfully,                                        Folk & Fritz.

$4,263 94
1,038 41 mdse. ret'd Oc. 28th.

$3,225 53
145 15 4½%

$3,080 38

The accompanying check read:

No. 12,023.                                        New York, November 13, 1896.

The National Park Bank pay to the order of Wm. Amer & Co. three thousand and eighty 38/100 dollars.

$3,080 38/100.                                        Folk & Fritz.

The plaintiffs, without acknowledging receipt of the check or letter, indorsed the check, and cashed it through their bank.    Shortly thereafter the defendant Fritz called upon the plaintiffs at their store in Philadelphia, apparently in reference to the rejected goods; and, at an interview then had, Edward C. Amer, one of the plaintiffs, insisted that the defendants had no right to return any of the skins. Fritz, it appears, did not demur.    A few days later the plaintiffs

wrote, demanding payment for the 82 bundles at the stipulated price of 13 cents per foot. Upon the defendants' failure to comply, this action was instituted.

On the foregoing facts, the trial and general terms of the city court held that a valid accord and satisfaction were established. This was error. The record fails to show either the assent to, or the consideration for, the new agreement which the defendants would invoke to defeat the plaintiffs' claim. An accord and satisfaction, to be binding, require an executed new contract, founded on a new consideration. Nassoiy v. Tomlinson, 148 N. Y. 326, 42 N. E. 715. The defendants apparently contend that the acceptance and retention by the plaintiffs of the check of November 13th, after a dispute had arisen concerning the 82 bundles of defective skins, consummated such a new contract, for which a compromise was the consideration. The contention is unsound. There was no dispute as to the amount due. No question was or is raised as to the agreed price of the goods retained or of the goods returned. There was no difference between the parties either as to quantity or price. The number of feet of combination kid skins accepted were calculated at the stipulated 13 cents a foot, the number of feet rejected were similarly calculated at 13 cents per foot, and the aggregate of the several sums exactly equaled the amount of the original bill. The dispute, if any existed between the parties, concerned the quality of some of the skins, and the right to reject them. It is unnecessary to consider here whether the defendants could, as a matter of law, return part of the skins, while accepting the remainder. The defendants returned some of the goods. The plaintiffs refused to receive them. Then the defendants, in order to avail themselves of the discount allowed for payment within 30 days, remitted the exact undisputed value of the goods retained, particularly specifying in their letter accompanying the check that the skins they had sought to return were not included in the remittance. After the check had been received, the parties had an interview at which they attempted to adjust their differences respecting the skins refused. This failed, as the plaintiffs insisted that the defendants had taken their chances on the quality of the lot. The alleged dispute thus continued after receipt and use of the check, and we think it would require a construction very far removed from the evident intention of the parties to hold that the words "less mdse. ret'd" fastened a condition on the acceptance of the check to the effect that the plaintiffs waived further claims. The element of assent to the alleged new agreement is entirely wanting, and cannot be implied, as a matter of law, by the mere retention of the check. Brake Co. v. Prosser, 157 N. Y. 289, 51 N. E. 986; Kruger v. Geer, 26 Misc. Rep. 772, 56 N. Y. Supp. 1015; McKay v. Myers, 168 Mass. 312, 47 N. E. 98. "Ordinarily the retention of a check inclosed in a letter which refers to the amount as the balance due on accounts between the parties will not be held to be an accord and satisfaction, so as to bar an action for the balance due. It is only in cases where a dispute has arisen between the parties as to the amount due, and a check is tendered on one side in full satisfaction of the matter in controversy, that the other party will be deemed to

have acquiesced in the amount offered by an acceptance of the check." Brake Co. v. Prosser, supra.

In addition to the absence of assent, we think there was an absence of consideration. Even if we accepted as true the defendants' contention that the check was regarded by them as fully paying the debt due for the goods delivered, and that they intended, by the use of the words "less mdse. ret'd," to indicate that they would recognize no further indebtedness, and even had the plaintiffs assented, yet the alleged new agreement was without benefit or possibility of benefit to the creditors (that is, the plaintiffs), and therefore nudum pactum and void. Payment for the goods delivered, as to which the liability was undisputed and liquidated, cannot be invoked as a consideration for an agreement to relieve the defendants of the disputed liability. In the very recent case of Railway Co. v. Clark, 92 Fed. 968, Lacombe, J., after a most exhaustive review of the authorities bearing on the necessity of a consideration to support an accord, sums up the rule thus, at page 976:

"Payment by a debtor of a liquidated amount, presently due, and to which he had no defense that can be urged in good faith or with color of right, is not, by itself, a sufficient consideration to sustain a release by the creditor of other liquidated claims against the debtor."

So far from having been in a position to litigate the claim invoked as the basis of the accord, the defendants conceded its amount, and promptly and voluntarily paid it, to avail themselves of the discount. To that part of the claim they at no time asserted any objection or defense. As the evidence now stands, the words "less mdse. ret'd" indicate merely the quantity being paid for, leaving for subsequent settlement the question of the right to return the 82 bundles of skins. On a new trial, additional circumstances may be developed that may justify a jury in finding facts that will establish a valid accord; but, in the present state of the record, we must hold that there is in this regard a failure of proof. The judgment must be reversed.

Judgment reversed, and a new trial ordered, with costs to the appellants to abide the event. All concur.